HOWARD D. HENDRICKSON & another[1] *vs.* CLARK S. SEARS.

Suffolk.    February 7, 1974. — April 9, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Limitations, Statute of.  Negligence, Of attorney.  Attorney at Law. Statute, Construction.  Words, "Accrues."*

Whether a malpractice claim against an attorney was in tort or in contract was irrelevant to whether the statute of limitations had expired for that claim, where the alleged malpractice, although it occurred ten years before the action commenced, was not or should not reasonably have been discovered more than two years before the action commenced. [84-86]

Review of authorities on when the statute of limitations begins to run in cases of malpractice by professionals. [86-88]

A cause of action against an attorney for negligent certification of title to real estate does not "accrue" for the purposes of G. L. c. 260, §§ 2 and 2A, until the misrepresentation is discovered or should reasonably have been discovered. [90-91]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.

*Daniel J. Gleason* for the plaintiffs.

*Vincent Galvin* for the defendant.

BRAUCHER, J.    Pursuant to S.J.C. Rule 3:21, 359 Mass. 790 (1971), the United States Court of Appeals for the First Circuit has certified to us the question when a client's cause of action against an attorney for negligent certification of title to real estate "accrues" for purposes of G. L. c. 260, § 2A. We hold that the cause of action does not accrue until

---

[1] Marilyn J. Hendrickson, his wife.

the misrepresentation is discovered or should reasonably have been discovered, whichever first occurs, and so answer the certified question.

According to the Court of Appeals, the complaint made the following allegations. In April, 1961, the plaintiffs retained the defendant, a Massachusetts attorney, to search the title to real estate in Topsfield. The defendant certified to the plaintiffs that the title was "valid, clear and marketable," except for an encumbrance not relevant here. The plaintiffs then purchased the property and remained unaware of other encumbrances until they contracted to sell the property in 1970. In June, 1970, the prospective purchasers refused to buy because of a recorded easement running through the premises, and the plaintiffs suffered a loss in effecting modification of the easement and in the ultimate sale of the property.

On October 27, 1971, the plaintiffs commenced the action in the United States District Court for the District of Massachusetts. The judge allowed a motion by the defendant to dismiss the action on the ground that the limitation period had run. *Hendrickson* v. *Sears,* 359 F. Supp. 1031 (D. Mass. 1973), citing *Pasquale* v. *Chandler,* 350 Mass. 450 (1966). A judgment of dismissal was entered, the plaintiffs appealed to the Court of Appeals, and that court on its own motion certified to us the question set forth in the margin.[2]

1. Under the Federal Rules of Civil Procedure the plaintiffs' complaint need not and did not label the action as an action of contract or as an action of tort. Compare Mass. R. Civ. P., Rule 2, *post,* 733, effective July 1, 1974. Under our traditional practice, a plaintiff may elect to bring either an action of contract or an action of tort in such a case, but he need not choose between the two labels. *Ashley* v. *Root,* 4 Allen 504, 505-506 (1862). Under G. L.

---

[2] "Does a client's cause of action against an attorney for negligent certification of title to real estate 'accrue' for purposes of Mass. G. L. c. 260 § 2A at the time the certification was given, at the time of discovery of the misrepresentation, or at the time when any misrepresentation should reasonably have been discovered?"

c. 260, § 2, actions of contract "shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues." Under G. L. c. 260, § 2A, actions of tort, except as otherwise provided, "shall be commenced only within two years next after the cause of action accrues."[3]

That limitation statutes should apply equally to similar facts regardless of the form of proceeding is intrinsically a sound proposition. See *New Bedford* v. *Lloyd Inv. Associates, Inc.* 363 Mass. 112, 120 (1973). To that end the Legislature has in some situations made explicit provision for the same limitation period for particular types of claims, whether in contract or in tort. G. L. c. 260, § 2A, inserted by St. 1948, c. 274, § 2 (actions of contract to recover for personal injuries listed with actions of tort). G. L. c. 260, § 4, as amended by St. 1921, c. 319 (actions of contract or tort for medical malpractice). In other situations we have looked to the "gist of the action" or the essential nature of the plaintiff's claim. See *Brackett* v. *Perry*, 201 Mass. 502, 504 (1909); *Kagan* v. *Levenson*, 334 Mass. 100, 103 (1956); *Desmond* v. *Moffie*, 375 F. 2d 742, 743 (1st Cir. 1967). Compare *Gallagher* v. *First Natl. Bank*, 346 Mass. 587, 589 (1964) (survival of action). In still others we have allowed the plaintiff to elect. *Miller* v. *Miller*, 7 Pick. 133, 136 (1828). Compare *Clark* v. *Swift*, 3 Met. 390, 395-396 (1841); *McQuesten* v. *Spalding*, 231 Mass. 301, 303-304 (1918). See Prosser, The Borderland of Tort and Contract, Selected Topics on the Law of Torts, 380, 440-443 (1953); Wade, The Attorney's Liability for Negligence, 12 Vand. L. Rev. 755, 772-773 (1959); Roady, Professional Liability of Abstracters, 12 Vand. L. Rev. 783, 792-793 (1959); comment, Tort in Contract: A New Statute of Limitations, 52 Ore. L. Rev. 91 (1972); annotation, 49 A. L. R. 2d 1216 (1956).

In the present case the Federal district judge found that

---

[3] Statute 1973, c. 777, § 1, amends § 2A to provide for a three-year period, effective January 1, 1974, for "causes of action arising on and after said date."

the statute of limitations had run as to the plaintiffs' claim, regardless of whether the action was classified in contract or in tort, since the alleged malpractice occurred more than ten years before the action was commenced. Since there is no claim here that the alleged malpractice was discovered or should have been discovered more than two years before the action was commenced, the outcome cannot turn on whether it is governed by § 2 or by § 2A of c. 260. We have not been asked to determine that question, and we do not.

2. The traditional view of an action for damages resulting from the negligence of an attorney is that the gist of the action, regardless of its form, is the attorney's breach of contract, and that the cause of action therefore accrues at the time of the breach. *Short* v. *M'Carthy*, 3 B. & Ald. 626, 630 (K. B. 1820) (action in assumpsit). *Howell* v. *Young*, 5 B. & C. 259, 266 (K. B. 1826) (action on the case). *Wilcox* v. *Plummer*, 4 Pet. 172, 182 (1830) (action in assumpsit). See annotation, 18 A. L. R. 3d 978, 988 (1968). In reliance on those cases we took the view that the statutory period began to run on an action of tort for medical malpractice at the time of the breach of the surgeon's contract, "and not when the actual damage results or is ascertained." *Capucci* v. *Barone*, 266 Mass. 578, 581 (1929). *Maloney* v. *Brackett*, 275 Mass. 479, 481 (1931). *Pasquale* v. *Chandler*, 350 Mass. 450, 455-458 (1966). But compare *Haggerty* v. *McCarthy*, 344 Mass. 136, 145 (1962) (dissenting opinion).

Nevertheless, the parties and the Court of Appeals agree that we have not previously addressed ourselves to the precise question now presented. In deciding such a matter of first impression, we should take account of modern legal thought on the subject as well as of such intimations as we can find in our own opinions on related points. In *Pasquale* v. *Chandler*, 350 Mass. 450, 456 (1966), we noted "the growing body of case law at odds with the *Capucci* doctrine which computed the statute's period from the date of the operation or act of malpractice." There is a comparable growing body of case law with respect to legal malpractice. *Fort Myers Seafood Packers, Inc.* v. *Steptoe & Johnson*, 381

F. 2d 261, 262 (D. C. Cir. 1967). *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal. 3d 176, 194 (1971). *Downing* v. *Vaine,* 228 So. 2d 622, 627 (Ct. App. Fla. 1969). *Hillock* v. *Idaho Title & Trust Co.* 22 Idaho 440, 450 (1912) (abstracter). *Rozny* v. *Marnul,* 43 Ill. 2d 54, 72-73 (1969) (surveyor). *Chrischilles* v. *Griswold,* 260 Iowa 453, 459-463 (1967) (architect). *Price* v. *Holmes,* 198 Kans. 100, 105 (1967). *Marchand* v. *Miazza,* 151 So. 2d 372, 375 (Ct. App. La. 1963). *Mumford* v. *Staton, Whaley & Price,* 254 Md. 697, 714 (1969). *Thorne* v. *Johnson,* 483 S. W. 2d 658, 662 (Ct. App. Mo. 1972) (abstracter). *New Market Poultry Farms, Inc.* v. *Fellows,* 51 N. J. 419, 425-426 (1968). *Atkins* v. *Crosland,* 417 S. W. 2d 150, 154 (Texas 1967).

Some of those decisions may be thought to depend on statutes which differ significantly from ours. Most of the others bring the law on legal malpractice into line with decisions of the same court on medical malpractice. The defendant therefore argues that the legal profession in Massachusetts should be held to the same rules as the medical profession by extending the *Capucci* doctrine to the present case. The Federal district judge adopted this reasoning: "There certainly is no valid reason why the legal profession should be treated more harshly than the medical profession as to the date when their members may successfully bar adverse claims under the statute of limitations." 359 F. Supp. at 1033.

We think, however, that the Legislature put medical malpractice cases in a distinct category. The *Capucci* doctrine was originally thought by us to follow from generally applicable principles. But in *Haggerty* v. *McCarthy,* 344 Mass. 136, 145 (1962), although the majority did not reach the point, three dissenting Justices stated that the doctrine should not be applied to an "inherently unknowable" claim, citing *Urie* v. *Thompson,* 337 U. S. 163, 169 (1949), and *United States* v. *Reid,* 251 F. 2d 691, 695 (5th Cir. 1958). In *Pasquale* v. *Chandler,* 350 Mass. 450, 456 (1966), we said that "we would be disposed to reconsider the question" but for "recent legislation."

The "recent legislation" referred to consisted primarily of the amendment of G. L. c. 260, § 4, by St. 1965, c. 302, relating solely to actions for medical malpractice. Until 1948 the limitations period generally applicable to actions of contract, tort and replevin was six years. R. L. c. 202, § 2 (1902), the predecessor of c. 260, § 2. Section 4 provided a two-year period for a list of specified actions, and St. 1921, c. 319, added to that list "actions of contract or tort for malpractice, error or mistake, against physicians, surgeons, dentists, hospitals and sanitaria." In 1965 an amendment was proposed establishing a two-year discovery rule and a five-year outer limit for such actions, but the Legislature instead changed the period from two years to three years. We gave this recent legislation great weight in our decision in 1966 not to reconsider the *Capucci* doctrine.

There is no comparable recent legislation with respect to actions for legal malpractice. The question presented to us is one of first impression, the *Capucci* doctrine is relevant only by way of analogy, we are free to consider for the first time its utility for the present purpose, and we are still disposed to reconsider its intrinsic soundness.

3. Statutes of limitations stem from 21 Jac. 1, c. 16 (1623). A general six-year period for torts and contracts, with a two-year period for listed intentional torts, dates in Massachusetts from Rev. Sts. c. 120, § § 1, 2 (1836), as does the commencement of the period when "the cause of action accrues." Statutes define accrual in a few situations. G. L. c. 260, § 6 (mutual current account); c. 106, § 2-725 (2) (breach of contract for sale). But in general the definition of accrual has been left to judicial rationalization and interpretation. See *New Bedford* v. *Lloyd Inv. Associates, Inc.* 363 Mass. 112, 119 (1973). A discovery rule is explicitly provided in cases of fraudulent concealment of the cause of action. G. L. c. 260, § 12. In all these respects our statutes have followed a pattern generally similar to that in other States. See Developments in the Law - Statutes of Limitations, 63 Harv. L. Rev. 1177 (1950).

No general change in the basic provision of G. L. c. 260,

§ 2, for a six-year period was made until 1948, but there have been numerous amendments to § 4, providing shorter periods for particular types of actions. Among the most important have been the amendments beginning with St. 1925, c. 346, § 10, which subjected certain motor vehicle torts first to a one-year period and later to a two-year period under § 4. See, e.g., *Gaudette* v.*Webb,* 362 Mass. 60, 62-65 (1972), and cases cited. Such amendments led to the amendment of § 2 by St. 1948, c. 274, § 2, inserting a new § 2A and establishing a two-year period instead of a six-year period for actions of tort generally, actions of contract to recover for personal injuries, and actions of replevin. The 1948 amendment was designed to produce more uniformity in limitation of actions of tort generally and of actions of contract for personal injuries. The focus of the draftsmen was on accidents resulting in injuries to person or property; there is no indication that the amendment was intended to affect in any way the time of accrual. See Twenty-third Report of the Judicial Council (1947), Pub. Doc. No. 144, pp. 39-40. The same may be said of St. 1973, c. 777, changing the two-year period to three years in both § 2A and § 4. Compare 1973 Senate Doc. No. 584.

As noted above, the Legislature has long provided a discovery rule for cases of fraudulent concealment. G. L. c. 260, § 12. In 1949, it established a discovery rule with an outer limit for tort actions arising out of hit and run accidents. G. L. c. 260, § 4B, inserted by St. 1949, c. 531, and amended by St. 1954, c. 107. See *Pasquale* v. *Chandler,* 350 Mass. 450, 457, n. 4 (1966). Compare G. L. c. 260, § 2B, inserted by St. 1968, c. 612 (design, planning, construction or general administration of improvement to real property). We do not think those statutes negate the possibility that accrual of other causes of action may sometimes be postponed until the plaintiff discovers or has an opportunity to discover the facts. Without benefit of such statutes, we have in a variety of circumstances held that a cause of action accrues on the happening of an event likely to put the plaintiff on notice. *Robertson* v. *Hirsh,* 276 Mass. 452, 454 (1931) (liability of attorney to client for secret profit).

*Stoneham Five Cents Sav. Bank* v. *Johnson,* 295 Mass. 390, 395-396 (1936)(reformation). *Dodge* v. *Anna Jaques Hosp.* 301 Mass. 431, 436 (1938) (abandonment of purpose of gift). *Akin* v. *Warner,* 318 Mass. 669, 676 (1945) (claim against trustee). *Warren* v. *Ball,* 341 Mass. 350, 353-354 (1960) (bailment). *Marinucci Bros & Co. Inc.* v. *Commonwealth,* 358 Mass. 806 (1970) (excess refund excluded from contractor's "semifinal estimate"). *Kirkpatrick* v. *Commonwealth,* 362 Mass. 154, 162-163 (1972) (failure of administrative remedy). Compare *Wolverine Ins. Co.* v. *Tower Iron Works, Inc.* 370 F. 2d 700, 705-706 (1st Cir. 1966) (indemnity between tortfeasors).

Thus we think the question whether a discovery rule is applicable to this case is fairly open. If so, the arguments for application of such a rule are overwhelming. The practical consequence of the rule for which the defendant contends is "that a title report which cannot be relied upon two years after its issuance is practically valueless." *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal. 3d 176, 183 (1971). The attorney, like the doctor, is an expert, and much of his work is done out of the client's view. The client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the professional or to retain a second professional to do so. The relation of attorney and client is highly fiduciary in its nature. *Dunne* v. *Cunningham,* 234 Mass. 332, 335 (1920). The attorney owes his client a duty of full and fair disclosure of facts material to the client's interests. See Am. Bar Assn. Code of Professional Responsibility, Ethical Consideration (EC) 9-2 (1971). Application of the *Capucci* doctrine would provide an incentive to violation of that duty. Compare *Hayes* v. *Gessner,* 315 Mass. 366, 368-369 (1944).

These considerations have particular force, however, where as here the alleged defect in the certified title is a recorded easement. The defect is "inherently unknowable" to the client unless he duplicates the attorney's title search. The certification is a written instrument; the title is a matter of public record, and the danger of faulty recollec-

tion by observers of fleeting events is much less than in many other types of cases. The certification of title by an attorney is widely regarded as an alternative to title insurance, which would provide protection far beyond two years. See Johnstone, Title Insurance, 66 Yale L. J. 492, 497 (1957).

4. We have considered the possibility that some outer limit should be provided, although that subject is not mentioned in the question certified to us. Suffice it that in matters affecting real estate titles the Legislature has commonly employed periods of twenty or thirty years, well beyond the period involved here. See, e.g., G. L. c. 260, § 21; c. 184, § 27 (b), inserted by St. 1961, c. 448, § 1. Similarly, we do not consider the question whether the cause of action would accrue on discovery in the absence of appreciable harm. Compare *Budd* v. *Nixen,* 6 Cal. 3d 195, 200 (1971), and *Marchand* v. *Miazza,* 151 So. 2d 372, 375 (Ct. App. La. 1963), with *Harris* v. *Rosen,* 28 Misc. 2d (N.Y.) 968 (1961).

5. The question certified is answered as follows: A client's cause of action against an attorney for negligent certification of title to real estate does not "accrue" for the purposes of G. L. c. 260, §§ 2 and 2A, until the misrepresentation is discovered or should reasonably have been discovered, whichever first occurs. The Reporter of Decisions and the clerk of this court are to follow the procedure set forth in *Hein-Werner Corp.* v. *Jackson Indus. Inc.* 364 Mass. 523, 530-531 (1974), except that the copy under the seal of this court is to be transmitted to the clerk of the United States Court of Appeals for the First Circuit.

*So ordered.*